UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Gerardo Lopez & Maria Lopez,<br><br>                     Debtors. | |
| Gerardo Lopez & Maria Lopez,<br><br>                     Plaintiffs<br><br>v.<br><br>Credit Union One,<br><br>                     Defendants. | Bankruptcy No. 13-bk-37072<br><br>Chapter 13<br><br>Adversary No. 13an/ 14-ap-1446 |

**MEMORANDUM OPINION ON CREDIT UNION ONE'S MOTION TO DISMISS**

      Gerardo and Maria Lopez, ("Debtors") filed a joint petition seeking bankruptcy relief under Chapter 13. Subsequently, they filed this adversary proceeding seeking to strip down the first mortgage on their home at 1347 58th Court in Cicero, Illinois (the "Property") held by defendant Credit Union One (the "Lender"), thus bifurcating the mortgage into secured and unsecured portions under § 506(a)(1) of the Bankruptcy Code. Debtors maintains that strip down of the first mortgage is permissible despite the antimodification provision of § 1322(b)(2), which provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence." They only occupy one unit in a two-unit property, and assert that the second unit was rented when the mortgage was granted, and it still is rented. Defendant argues that the Property was not used at all for rental income at the time that Debtors obtained the mortgage, and therefore the antimodification provision of § 1322(b)(2) still applies.

      Defendant filed a motion to dismiss the Complaint. After the Motion to Dismiss was filed, Judge Hollis of this district issued an opinion on § 1322(b)(2), holding that the antimodification provision applies only to single family residences. In re Abrego, 12-bk-29855 Dkt. 73 (Bankr. N.D. Ill. March 3, 2014) at *8. The parties here were invited to submit additional briefing on the application of Abrego. The issue of whether the subject property was a single family home either at the time the mortgage was granted or at the date of the bankruptcy petition is a mixed question of fact and law. Therefore an evidentiary hearing was held. Pursuant to Findings of Fact and Conclusions of Law made and entered hereinbelow it is held that the Property was not the

"debtor's principal residence" under the statute, and therefore the antimodification provision does not apply.

## FINDINGS OF FACT

Gerardo and Maria Lopez first purchased the Property, located at 1347 58th Court in 1992. At the time, it was a 2-flat with tenants occupying both units. The Lopez family moved into the basement unit a month thereafter, after the lease of one of the tenants expired. In 2005, Debtors refinanced the original mortgage on the Property with USA One National Credit Union, predecessor in interest to Credit Union One here.

The parties have stipulated that Credit Union One has a first mortgage on the real property located at 1347 58th Court in Cicero, Illinois, that the Property is the Debtors' primary residence, and that the Property is a two-unit building, and was a two-unit building at the time Debtors obtained the mortgage with Credit Union One.

From evidence admitted at the evidentiary hearing, it is found that one unit of the Lopez's two-flat was used as a rental unit continuously from when the Lopezes first purchased the Property in 1992 until present day. Gerardo Lopez testified that he gave his 2004 tax return, which showed that the Property generated rental income in 2004, to a bilingual employee of the credit union, and that testimony is found to be credible.

Further findings of fact appear in the discussion below.

## DISCUSSION

### JURISDICTION

Jurisdiction lies over this motion to dismiss the adversary proceeding is provided by 28 U.S.C. § 1334. The matter is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. This adversary proceeding arises under §§ 506(a)(1) and 1322(b)(2) of the bankruptcy code, and is therefore core under 28 U.S.C. § 157(b)(2)(K). It seeks to determine the extent of a lien and therefore "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

### MEANING OF PRINCIPAL RESIDENCE IN § 1322(b)(2)

Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtors' principal residence." Courts have applied three different interpretative approaches to that clause when there is a multi-unit property used at least in some part as the debtors' principal residence.

2

The majority position concludes that where a property contains both a debtors' principal residence and one or more rental units, the antimodification provision of § 1322(b)(2) does not apply. E.g. In re Scarsborough, 461 F.3d 406, 414 (3d Cir. 2006). One minority position concludes that as long as part of a property serves as a debtor's principal residence, the antimodification provision of § 1322(b)(2) applies, regardless of how many units the property may contain. E.g. In re Macaluso, 254 B.R. 799 (Bankr. W.D.N.Y. 2000). Another minority position would make a case-by-case determination, applying a multi-factor balancing test. E.g. In re Brunson, 201 B.R. 351, 354 (W.D.N.Y. 1996).

The majority position has been adopted by the only two circuit court of appeals opinions to squarely consider the issue. In re Scarsborough, 461 F.3d at 414; Lomas Mortg., Inc. v. Louis, 82 F.3d 1, 6 (1st Cir. 1996). Further, it has been adopted by other bankruptcy judges in this district. In re Abrego, 12-bk-29855 Dkt. 73 (Bankr. N.D. Ill. March 3, 2014) at *3-6 (collecting cases). The Abrego opinion reaches its conclusion based on legislative history because the statutory language was held to be ambiguous. Id. at *7. The Scarsborough opinion reached the same conclusion based on the plain language of § 1322(b)(2) alone. Scarborough, at 414 (3d Cir. 2006).

One minority approach was articulated in a bankruptcy court opinion holding that § 1322(b)(2) is unambiguous, and applies as long as "the debtor principally resides in that real estate or some part thereof" because in § 1322(b)(2), the adverb "only" modifies the word "secured," not "principal residence." In re Maculso, 254 B.R. at 800. That is, "So long as the only collateral is a single parcel of real estate, it matters not that that parcel may fulfill many uses or be divided into many units." Id. However, the phrase, "by a security interest in real property that is the debtor's principal residence," modifies the adverb "only." While the phrase does not say "by a security interest in real property that is *only* the debtor's principal residence," it also does not say "by a security interest in *a single parcel* of real property that *includes* the debtor's principal residence." This "single parcel" theory would extend the reach of § 1322(b)(2) to a 100-unit apartment complex (Lomas, 82 F.3d at 6), a fifty-acre farm which might include a debtor's residence (In re Glenn, 760 F.2d 1428, 1441 (6th Cir. 1985) (concluding that § 1322(b)(2) applied because it was undisputed that the debtors did not use the 50-acre plot as a farm)), or to a bed-and-breakfast where the patrons also happen to also reside (In re McVay, 150 B.R. 254 (Bankr. D. Oregon, 1993).), and so on.

Nor is there a good reason to adopt a case-by-case approach. The Brunson opinion announced seven factors, but cautioned, "there surely may be others." In re Brunson, 201 B.R. at 353. But, as the Scarsborough opinion pointed out, nothing in the language of § 1322(b)(2) requires

3

a multi-factor balancing test, and the consequent unpredictability created by "a subjective, hindsight analysis as to the intent of parties." That uncertainty would result in harm to the residential mortgage market. In re Scarsborough, 461 F.3d at 414. As a bankruptcy court opinion explained,

> Deciding whether a particular mortgage falls within the home mortgage exception perhaps years after the fact on a case-by-case basis may ensure an equitable result for the particular debtor and lender involved. However, the home mortgage lending market as a whole pays a price for this result because of the considerable uncertainty such an approach lends to the underwriting decision when home loans are made.

In re Bulson, 327 B.R. 830, 842 (Bankr. W.D. Mich. 2005).

Further, the majority approach is consistent with the treatment of lenders who take a security interest in a debtor's principal residence as well as other property. When a security agreement purports to take a security interest in a debtor's principal residence and some other collateral, such as business inventory, the protections of § 1322(b) do not apply. In re Larios, 259 B.R. 675 (Bankr. N.D. Ill. 2001). If the antimodification provision does not apply when a security interest extends beyond a principal residence to business property, neither should it apply when a security interest extends beyond a principal residence to a rental unit on the same property.

The Abrego opinion held that the correct date for determining whether a property is a debtor's principal residence is the date that the security interest was granted. Id. at *9. Abrego noted that the majority of courts to consider the issue have held that the date of the bankruptcy petition should be dispositive, but that the better reasoned approach is to look to the date of the security interest. Id. Judge Hollis reasoned that the date the security interest was granted should be dispositive because that puts the focus on what the parties originally bargained for, and avoids the potential for manipulation by debtors who would otherwise seek temporary tenants prior to filing. Id. Courts that choose the petition date as dispositive focus instead on the usual bankruptcy norm that "a creditor's right to payment, whether it later is deemed secured or unsecured depending on the value of the collateral, is fixed at the petition date." In re Abdelgadir, 455 B.R. 896, 903 (B.A.P. 9th Cir. 2011). Using the petition date also avoids "a subjective look into the parties intentions which is difficult to ascertain after the fact." In re Christopherson, 446 B.R. 831, 835 (Bankr. N.D. Ohio 2011); Accord, In re Benafel, 461 B.R. 581 (B.A.P. 9th Cir. 2011). However, it is not necessary to determine which date is appropriate because the Property was at both dates a two-flat, with one unit occupied by the Debtors, and the other unit used to generate rental income.

The parties stipulated that the Property was a two-flat at the time the security interest was granted. However, the issue of whether a property was a single family residence is more than whether a property contains two units. The actual use of a property should be considered.

Here, the Lender's witness Linda Lawless, the loan processing officer who approved the Lopezes's loan for Credit Union One in 2005, testified regarding a loan application form (Defendant Exh. 1) that she had filled out based on information provided by the Lopezes. She testified that she would have recorded on the loan application form that the subject property had rental income had she been informed that the building was a 2-unit with rental income; the form would then have been completed differently. She testified, based on the loan application before her, that no rental income had been reported to her at the time but could not recall what documents were actually provided. She further testified that she could not recall any specific conversations she may have had with the Debtors leading up to the issuance of the loan in 2005. Nor did the Lender seek to offer any backup for the Loan Application admitted into evidence.

The loan application form itself contains some inconsistencies. On page 1, it provides that the "No. of Units" is "2," while on page 3, the 1347 S 58th Court property is coded as a "1Fam" indicating that it is a single family. (Defendant Exh. 1.) At most, the Lender's evidence shows that the Lender's officer believed in 2005 that the Property was a single family residence, but what the Lender thought about the character of the Property, single family or multi-unit rental, has very little probative value as to the actual character of the Property.

Gerardo Lopez testified that the Property includes a rental unit, and has always included a rental unit since he has owned it. He further testified that when he purchased the property in 1992, he could not move in because there were tenants in both units, that when he first moved in he lived in the basement unit, and that presently he lives in the top-floor unit. He also testified that he and his family have continuously lived in one unit or the other since then, and rented the other unit to tenants more or less continuously as well.[1] He testified that he was not interviewed by Ms. Lawless, but was interviewed by another person at the Lender who spoke both English and Spanish. Mr. Lopez does not speak English well.

His testimony was corroborated by his 2004 federal income tax return introduced into evidence. It reflected rental income on the Property. (Court's Exh. 1.) On Schedule E, Line 1A

---

[1] The tenant at the petition date was Susana Lopez, the Debtors' daughter, who was paying $700 a month in rent. The Lender argued that this suggests that the unit was not being used for rental income. However, the Loan Application showed that Debtors had three dependents in 2005 aged 7, 9, and 18. (Defendant Exh. 1) In 2014, those children would be 16, 18, and 27. No testimony was adduced as to the age of the daughter renting the rental unit, but the evidence shows that Debtors have adult children, and whichever daughter is renting the unit is paying rent. Renting a unit in a two-flat to an adult child does not change the character of a two-flat into a single-family residence.

5

provides 1347 South 58th Ct. in answer to "List the type and location of each rental real estate property." Line 3A further shows $4800 of rental income from the property. Lopez testified that when he applied for the loan in 2005, he showed his 2004 tax return to the employee of the Lender who interviewed him, and that his primary contact when applying for the loan was that bilingual person. In rebuttal, Lender's witness Linda Lawless testified she interviewed Mr. Lopez with the assistance of a bilingual employee of the Lender, and that if she had had the 2004 and 2003 tax returns, she would have recorded the information on the loan application. But that testimony does not contradict Mr. Lopez's testimony that he provided his 2004 tax return showing rental income on the Property to the Lender. Nor does it contradict what the tax return actually shows, that the Lopezes then used a unit of the Property to generate rental income.

Given all the evidence that the Property included an income generating rental unit at all relevant times, the Lender seeks to prevail because the lender made its lending decision without relying on the Property's generating rental income. However, the lender's internal reasons for making a loan is at most scant evidence as to whether the loan is "a claim secured only by a security interest in real property that is the debtor's principal residence." § 1322(b)(2). The reasoning in *Abrego* is clear and correct, that the "antimodification provision does not apply to principal residences that are not single family dwellings." *Abrego* at *8. Neither the statute nor the reasoning in *Abrego*, or the circuit authority cited earlier, turns on what the lender believed. The relevant question is whether the property was in fact a single family residence.

Thus, all of the evidence, including Gerardo Lopez's credible direct testimony that the Property has been continuously a two-flat with one rental unit since 1992, supports the conclusion that the Property was not a single family residence either at the time the security interest was granted or when the bankruptcy petition was filed. As Judge Hollis held in *Abrego*, "the antimodification provision of § 1322(b)(2) protects only claims secured by a security interest in real property *that is, in its entirety, the debtor's principal residence."* *Abrego*, at *10. (emphasis supplied); *Accord, In re Scarsboroguh*, 461 F.3d 406, 411 (3d Cir. 2006). Therefore, it must be held that the antimodification provision of § 1322(b)(2) does not apply to the Property at 1347 58th Court.

### CONCLUSION

For the foregoing reasons, it is held that the antimodification provision of § 1322(b)(2) does not apply to the mortgage held by Credit Union One. Since § 1322(b)(2) does not apply, § 501(a)(1) controls, and so Credit Union One's claim is secured "to the extent of the value" of the property, and unsecured as to the rest. § 501(a)(1) and Debtors may seek to reduce the

6

lender's first mortgage. Therefore, Credit Union One's Motion to Dismiss will be denied by separate order.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated June 16, 2014